## NELSON v. BROWN, DOTY & CO.

1. **Warehouseman**: STORAGE OF GRAIN: CONTRACT. A contract acknowledging the receipt of grain for storage, "loss by fire, heating, and the elements at the owner's risk," and giving the warehouseman the right to return grain of equal test and value, though not the identical grain, constitutes a bailment, which becomes a sale at the option of the bailee.

2. ——: ——: ——. Under such contract the title to the grain does not pass to the warehouseman by reason of its being mixed with other grain of the same grade, nor by his shipment of the identical grain deposited, but the property remains in the depositor, and at his risk as to fire and the elements, so long as there is left in store a mass in which he, as a tenant in common with other depositors, is the owner of an interest equal to his deposit. Following *Sexton & Abbott v. Graham et al., ante,* 181. ROTHROCK and BECK, JJ., *dissenting.*

### *Appeal from Benton Circuit Court.*

MONDAY, APRIL 26.

ACTION upon three wheat receipts, one of which is in the following words:

"No. 29.                    DYSART, IOWA, Nov. 3, 1874.

"Received of S. Everett, in store for account and risk of L. B. Nelson, 564$\frac{4}{10}$ bushels of No. 2 wheat, loss by fire, heating and the elements at owners risk. Wheat of equal test and value, but not the identical wheat, may be returned.

"BROWN, DOTY & CO."

Each of the other receipts imported a similar obligation. The evidence shows that the defendants were the proprietors of an elevator at Dysart, Iowa, and that they received the wheat for storage in their elevator; that the wheat upon being deposited in the elevator became mixed with other wheat of the same grade, some of which belonged to the defendants, and some to other depositors; that the defendants shipped from the common mass from time to time upon their own account, but never to exceed the amount to which they were entitled as owners, and there was enough on hand at all times

to meet the outstanding wheat receipts, until the elevator and contents were destroyed by fire, which occurred February 20, 1875. The plaintiff claims that the title to the wheat deposited by him had passed to the defendants, and that he is entitled to recover the value. The court gave the jury an instruction in these words:

"Whether the said wheat was in said elevator at the time it was burned, or whether it had before that time been shipped by the defendants, or otherwise disposed of, and converted by them to their own use, is a fact for you to determine from all the evidence in the case, and unless from all the evidence you believe that the actual and identical wheat received on plaintiff's account was in said elevator when it was burned, and also believe that said wheat was burned up with the elevator, your verdict will be for the plaintiff."

The jury found a verdict for the plaintiff, and judgment was rendered thereon. The defendants appeal.

*J. D. Nichols* and *Boies & Couch*, for appellants.

*Struble & Kinne*, for appellee.

ADAMS, CH. J.—It seems probable to us from the evidence that very little, if any, of the identical wheat deposited by the plaintiff was in store at the time the elevator was destroyed. But where grain is mixed in a common mass with grain of like kind and grade belonging to others, as was done in this case, the depositors become tenants in common of the mass. *Cushing v. Breed*, 14 Allen, 380; *Sexton & Abbott v. Graham*, *ante*, 181. From the time of such mixture the identity of the deposit made by each becomes entirely immaterial. Each depositor has a right of severance at any time, and in the exercise of such right he takes from the common mass without reference to the identity of his deposit. The remaining depositors become each the owner of a larger fraction in a smaller mass, and their interests are not thereby affected. The proprietor

<span style="font-variant:small-caps">1. Warehouse-man : storage of grain : contract.</span>

of the elevator would not, by reason of the severance and withdrawal of grain by one depositor, acquire title to the balance or any part thereof.   He would acquire nothing by the severance and withdrawal which could be taken by his creditors upon execution, or burned by fire.   If he would acquire nothing by one severance and withdrawal by a depositor, he would acquire nothing by two or any other number.   Yet it is evident that it might happen that the grain remaining to meet the receipts of the remaining depositors might not be identical to any extent with the grain deposited by them, or either of them.   Upon a former appeal it was held that, under the receipts, the defendants might appropriate and dispose of the grain upon their own account, and become debtors therefor. It is possible that the court had in mind in the instruction given the submission of the question as to whether the defendants, in the exercise of the right given them by the receipts, had appropriated and disposed of the grain on their own account, but if so we think that the language used did not submit the question properly.   It gave the plaintiffs a right to recover provided the identical wheat deposited by them had been shipped out, though in the ordinary course of business, and while their interest in the mass remained unchanged.

The question is, had the defendants made shipments upon the strength of their right acquired under the receipts, allowing them to become purchasers if they should so elect.   We think the court erred in the instruction given.

The appellee, however, contends that the title to the grain deposited by plaintiff passed to the defendants before any withdrawal by any one, and by reason of its being mixed by the defendants with other grain.   This would certainly not be so if the grain was mixed by the consent of the depositors. Such was the express ruling upon the former appeal.   44 Iowa, 457.   It is claimed, however, that such consent does not now appear.   Whether the rule would be different in the absence of such consent we need not determine.   The plain-

tiff's receipts provided that the defendants might return wheat of like test and value. Under such receipts he cannot claim that it was understood that he was contracting for special bins to preserve the identity of his deposits. If the preservation of the identity of the deposits was not deemed by plaintiff material, the defendants had a right to mix the wheat with other wheat of like test and value, in the ordinary conduct of the elevator business. In our opinion the title to the wheat did not pass to defendants by reason of being mixed, nor, as the instruction allowed the jury to find, by reason of such shipments as would remove the identical grain deposited, if they were such as to leave the plaintiff a tenant in common of the mass, and the owner of an interest equivalent to his deposit.                                    REVERSED.

Mr. Justice ROTHROCK and Mr. Justice BECK dissent, upon the ground expressed in the dissenting opinion of Mr. Justice ROTHROCK in *Sexton & Abbott v. Graham*, above cited.