THE CENTRAL STATE BANK, OF GENESEO, KAN., FRANK
FOSTER AND BILLA STODDARD v. BYRON WALKER,
FRANK WALKER, BYRON WECKMAN, JOHN WALKER,
LEONARD MCLAUGHLIN, AND CLARK CONKLING.

No. 248.

PLEADING AND PRACTICE— *Separate Bailments— Misjoinder of
Parties.* Where the evidence on behalf of plaintiffs, who sought
to recover a joint judgment for conversion of wheat stored by them,
severally, in an elevator, tended to prove separate bailments only
and not sales of the grain, it was error to overrule a demurrer to
such evidence on the ground of misjoinder of parties plaintiff and
of causes of action.

Error from Rice district court: ANSEL R. CLARK,
judge. Opinion filed May 19, 1898. Reversed.

*Sam. Jones,* for plaintiffs in error.

*C. F. Foley,* for defendants in error.

The opinion of the court was delivered by

MILTON, J. : ·The defendants in error, as plaintiffs
below, sued jointly to recover $3500 from the plaintiffs
in error, as defendants, for an alleged conversion ·by
the latter of 3500 bushels of wheat belonging to such
plaintiffs. Foster was sheriff and Stoddard deputy
sheriff of Rice county, and as such officers had levied
an order of attachment upon the wheat in the elevator
belonging to the ·Central Kansas Grain Company, at
Geneseo, in that county, the order having been issued
in an action brought by the Central State Bank, of
Geneseo, against the grain company. John S. Gibson,
cashier of the bank, and Coyle Bros. were among
the original defendants, but were dropped from the
case when the court sustained their separate demur-
rers to the evidence of the plaintiffs.

Substantially the only question presented for review

is the alleged misjoinder of parties plaintiff and of causes of action in the petition. The defendants raised this question by a demurrer, by answer, and by an objection to the introduction of testimony under the petition. The petition alleged that the plaintiffs severally deposited various quantities of wheat at divers times in an elevator owned and operated by the grain company, the total being 4200 bushels; that this wheat, in accordance with the custom of that locality, was mixed with other wheat, and frequent shipments were made by the grain company from the wheat stored in the elevator; that the wheat so deposited was held "as and for the wheat of plaintiffs," the grain company intending to keep on hand an amount equal to that deposited by plaintiffs; that through its fault, the quantity was reduced to about 3500 bushels prior to February 10, 1892; that on that day the grain company executed and delivered to the plaintiffs a written instrument as follows:

"ATCHISON, KAN., February 10, 1892.

"The undersigned having held for storage wheat belonging to and for Coyle Bros., John Walker, Byron Walker, Frank Walker, Byron Weckman, Clark Conkling, and Leonard McLaughlin, and the same having been attached for the debts of the undersigned, but in fact not the property of the undersigned, yet to secure said parties and to protect them, if there be any legal question as to their ownership of such wheat, the undersigned hereby sells and assigns and transfers to said parties said wheat, being all the wheat in the Geneseo elevator, operated by the undersigned and held and left for .and as the property of the said parties, this transfer being *pro rata* of the ownership held and understood to belong to said parties.

CENTRAL KANSAS GRAIN COMPANY.

By R. W. QUADE, *Manager.*"

It was further alleged that by virtue of this instrument the plaintiffs became tenants in common of the wheat in the elevator. Conversion of the wheat by defendants and consequent damages to the plaintiffs were duly alleged. As before stated, the answer averred a misjoinder of parties and of causes of action; a further averment being that the wheat belonged to the grain company at the time it was seized in an action brought against the latter by the bank.

The plaintiffs' trial theory seems to have been that the foregoing written instrument formed the basis of their title. Whatever contract was made by each of the plaintiffs with the grain company when delivering his wheat was oral, except in the case of John Walker, to whom a receipt was given signed by the manager of the company, and reciting that the wheat was received for storage at a rate therein named. It was dated July 14, 1890, and under date of January 20, 1891, bore this indorsement: "Advanced John F. Walker $115." Frank Walker testified that he deposited his wheat under an agreement that he would pay storage and that he might remove it whenever he saw fit. The manager of the company testified that the various parties deposited their wheat on terms similar to those in the case of John Walker.

The evidence, as well as the written instrument under which the plaintiffs claim, tended to prove bailments and not sales of the wheat by the various plaintiffs. In the instructions to the jury, the court adopted the theory of plaintiffs and eliminated all questions as to the bailments. The special findings of the jury are very conflicting. Two findings indicate that the wheat was deposited and not sold; one that the plaintiffs were not to have the wheat returned, but were to have the highest market price for

wheat of the same character when they chose to sell; and still another, that the grain company had the option to buy the wheat when the plaintiffs were ready to sell.

The distinction between a sale and a bailment of wheat, as applicable to the present case, is very clearly stated by the supreme court of Indiana in *Lyon v. Lenon*, 106 Ind. 572:

"The distinction is, Can the depositor by his contract compel a delivery of wheat, whether the dealer is willing or not? If he can, the transaction is a bailment. If the dealer has the option to pay for it in money or other wheat, it is a sale."

As already stated, the evidence in the record before us tends to prove bailments and not sales. We therefore hold that the plaintiffs had no joint cause of action, and that the joint verdict in their favor cannot be upheld. The defendants Gibson and Coyle Bros. do not appear to have been necessary parties to the final judgment herein. While the record indicates ownership in plaintiffs severally of the wheat in controversy, the joint judgment in their favor was erroneous.

The judgment of the district court is reversed and the cause remanded for a new trial.