## JAMES T. POTTER, Respondent, v. MT. VERNON ROLLER MILL COMPANY, Appellant.

### St. Louis Court of Appeals, April 14, 1903.

1. **Sales:** BAILMENT: WHEAT ELEVATOR: CONTRACT, CONSTRUCTION OF. Defendant owned a flouring mill, and in connection therewith an elevator, in which wheat of varying grades was received from different owners for storage, without charge, commingled in a general bulk, and taken out by defendant both for sale and for manufacture into flour. Defendant would return to depositors, at their option, wheat or its market value in flour or bran or cash, but no return of the identical wheat delivered was expected or made. Plaintiff and his assignors received slips of paper containing the name of the party delivering the wheat, the date, and the quantity delivered. The evidence showed that plaintiff was to receive flour and bran for his wheat, and his assignors were to be paid in cash at the market rate. The elevator and the wheat therein were destroyed by fire. *Held,* that the wheat so received constituted a sale.

2. ———: ———: DISTINCTION BETWEEN. The distinction between a bailment and a sale is, that the property received in bailment is intended to be returned, while on the other hand, if the same property may not be returned but other similar property returned in its stead, the transaction is a sale.

Appeal from Lawrence Circuit Court.—*Hon. Henry C. Pepper*, Judge.

AFFIRMED.

*William B. Skinner* and *Henry Brumback* for appellant.

(1)   The evidence shows no contract of exchange or of sale of the wheat of either Potter or Sims or Johnson; but does show that there was simply a delivery by them of wheat to defendant, who was engaged in the business of receiving and storing in its elevator, wheat of numerous farmers to be held for their use and

subsequent disposal at their pleasure; in other words, that in each instance there was a transfer of the possession, but no transfer of the ownership of the wheat. The transactions meet the exact conditions of that form of bailment, designated "deposit." 28 Am. and Eng. Ency. of Law 40; Story on Bailment, sec. 2; 2 Kent, side page 559. (2) The evidence fails to show any contract of exchange with Potter, or of sale with Sims or with Johnson. Denton v. McInnis, 85 Mo. App. 557; Greer v. Bank, 128 Mo. 572; Ober v. Carson's Exrs., 62 Mo. 214. (3) The fact that defendant mingled the wheat that of its own and of other depositors, does not have even a tendency to hold defendant to be a purchaser. Such method is a necessity of the immense modern commerce in grain, and all required is that the bailee keep sufficient on hand to meet all deposits. Kaufman v. Schilling, 58 Mo. 218; Martin v. Ashland Mill Co., 49 Mo. 28; Groff v. Belche, 62 Mo. 400; Drudge v. Leiter, 49 N. E. 37.

*Edw. J. White* for respondent.

(1) The delivery of the wheat sued for, under the circumstances detailed in evidence, constituted a sale or exchange of the wheat, in each instance, and not a bailment. O'Neal v. Stone, 76 Mo. App. 279; Martin v. Ashland Milling Co., 49 Mo. App. 23; Lawson, Bailments (1895), sec. 8, pp. 18 to 23; Benjamin, Sales (6 Am. Ed.), p. 6, note 6 to sec. 4; 2 Kent's Com. (12 Ed.), sec. 590, p. 798; Coleman v. Lipscomb, 18 Mo. App. 443. (2) The fact that the defendant used the wheat, indiscriminately, from its elevator and sold therefrom and mixed all the wheat in a common mass, is inconsistent with a bailment. James v. Plank (Ohio), 26 N. E. 1107; Brets v. Brehl (Penn.), 2 Am. St. 706; Weeland v. Sumnall (Minn.), 65 N. W. 628; Austin v. Seligman, 18 Fed. 519; Jones v. Kemp (Mich.), 12 N. W. 890; Woodward v. Seaman (Ind.), 25 N. E. 444; Ins. Co. v. Randall, L. R. 3, C. P. 101; Lyon v. Lennon, 7 N. E. 311.

REYBURN, J.—The evidence in this case discloses that defendant owned and operated a flouring mill at Mt. Vernon, and connected therewith an elevator in which, without charge for storage, was stored wheat obtained from different owners varying in quality and value and commingled in a general bulk, from which wheat was taken by defendant in course of its business, both for sale, and for manufacture into flour. It appeared to be a custom firmly established and well understood, to receive wheat from producers and owners, and return them on demand, at their option, wheat or the equivalent of its market value in flour and bran, or make actual payment of its market price in cash. It was also known and understood that wheat so delivered would be used and consumed by defendant, and that no return of the identical wheat delivered was expected or would be made. In lieu of receipts or certificates for the wheat delivered by them to defendant, plaintiff and his assignors had received mere slips of paper containing the name of the party delivering it, the date of delivery, the quantity in bushels and pounds and, in one instance, the grade. The proof tended to show that plaintiff was to receive flour and bran for the wheat delivered by him to defendant, and his assignors were to be paid in cash on demand, at the market rate, for such grain delivered by them to defendant. On August 31, 1901, the mill and elevator were destroyed by fire, at which time defendant had stored in its elevator, ready for delivery, wheat of the quality and exceeding the quantity received from its customers, including plaintiff and his assignors. The case was submitted to the court without a jury and a finding and judgment for plaintiff made and rendered.

The sole question presented to this court and answered in the affirmative by the trial court in its finding was, whether, under the circumstances and conditions detailed in evidence, the delivery of the wheat constituted a sale or exchange and not a bailment. It is

well settled that where a warehouseman has received grain on deposit for its owner, in a common granary or depository, where it is mingled with other grain of his own or others or both in such receptacle, to which from day to day other grain of various owners of like kind and quality is added, and from which from time to time sales and delivery of grain are made, and the warehouseman keeps constantly on hand grain of the quality received, prepared for delivery on call to all depositors, the contract is a bailment and not a sale. The circumstances that the identical grain is commingled with other grain and is not to be returned to the depositor, but a like quantity of the same kind and quality is to be returned, are not sufficient to convert the contract into a sale.   Lynn v. Lemon, 106 Ind. 567; Nelson v. Brown, 44 Iowa 455; s. c., 53 Iowa 555; Sexton v. Abbott, 53 Wis. 181; Rice v. Nixon, 97 Ind. 97, and cases therein cited.

But the law is equally well settled and supported by overwhelming weight of authority, that where there is no obligation to return the specific article to its original owner, nor to restore to him property of like quality, and the receiver is free to return another thing of value, he becomes a debtor and owner of the property delivered.   This distinction is thus recognized by the highest tribunal of America: ''Thus where logs are delivered to be sawed into boards, or leather to be made into shoes, rags into paper, olives into oil, grapes into wine, wheat into flour, if the product of the identical articles delivered is to be returned to the original owner in a new form, it is said to be a bailment and the title never vests in the manufacturer.   If, on the other hand, the manufacturer is not bound to return the same wheat or flour or paper, but may deliver any other of equal value, it is said to be a sale or a loan and the title to the thing delivered vests in the manufacturer.'' Powder Co. v. Burkhardt, 97 U. S. 110.   To the same effect from a great array of decisions and text-writers, may be

cited the following: Story on Bailments (9 Ed.), sec. 47; Schouler on Bailments (3 Ed.), sec. 6; 2 Kent's Commentaries (14 Ed.), sec. 590 and note; 1 Beach on Modern Law Contracts, sec. 746; 1 Benjamin on Sales, p. 2; Lawson on Bailments, par. 8; Martin v. Mill Co., 49 Mo. App. 23; O'Neal v. Stone, 79 Mo. App. 279; Weilend v. Sunwall, 65 N. W. 628; Lyon v. Lemon, 106 Ind. 567; Butz v. Diehl, 117 Pa. St. 589.

In brief, the distinction recognized by the above and other authorities is, that, to create the relation of bailor and bailee, it is imperative that the agreement, whether by express contract or implied by law, shall intend that the property received by the bailee shall be returned to the bailor.

The recent case invoked and relied on by appellant is not opposed to the conclusion herein, for the decision therein is expressly made dependent upon the language of the contract evidenced by the certificate of deposit, which imposed the loss by fire upon the depositor, not the miller, and the court therein says: "It is immaterial whether the transaction be considered one of bailment, sale or exchange, whether it was intended that title of the wheat passed immediately on placing it in defendant's bins, or whether the property in the flour to be taken in exchange was vested in the depositor then or was to become vested in the future. The contract remains the same, to-wit, that if the flour and bran, held in the mill to answer the demands for such depositors, should be destroyed by fire, it should be the loss of such depositors to the extent of whatever balance they might then have there to their credit." Wells v. Porter, 169 Mo. 252.

The judgment of the court below is abundantly supported by the evidence and is affirmed. *Bland, P. J.,* and *Goode, J.,* concur.