## No. 12,023.

## LYON v. LENON ET AL.

CONTRACT.—*Sale.*—*Bailment.*—*Character of Transaction.*—*Receipt.*—*Evidence Aliunde.*—Where a receipt for personal property delivered does not disclose whether the transaction is a sale or a bailment, extrinsic evidence may be resorted to.

SAME.—*Ambiguous Contract.*—*Particular Business.*—*Usage.*—*Presumption.*—*Evidence.*—Where a contract concerning a particular business is ambiguous, it will be presumed that it was made with reference to the ordinary course of such business, and evidence showing such course is admissible.

SAME.—*Delivery of Grain.*—*When Deemed in Pursuance of Sale and not of Bailment.*—Where grain is received by a dealer under a contract, express or implied, to pay the market price therefor on the demand of the owner, but with no understanding that the latter shall have the right to demand either his own or other grain in return, and the grain so received is mixed with other of like quality in bins, from which shipments are made daily, the transaction is a sale, and not a bailment.

SAME.—*Right to Demand Redelivery.*—*Election.*—It is only where the owner

retains the right from the beginning to elect whether he will demand the redelivery of his property or other of like quality and grade, that the contract will be construed to be one of bailment. If he surrenders to the dealer the right of election, it will be considered a sale, with an option on the part of the latter to pay either in money or property as stipulated.

From the Carroll Circuit Court.

*J. Applegate* and *C. R. Pollard,* for appellant.

*J. C. Odell, J. C. Nelson* and *Q. A. Myers,* for appellees.

MITCHELL, J.—This was a suit in replevin to recover the possession of five hundred and seventy bushels of wheat.

The facts as developed by the evidence are as follows: In 1882, and prior thereto, Lenon was the owner of a grain-house and elevator at Delphi, Indiana. He testified that he was not a warehouseman, and that he never stored wheat for hire. In July, 1882, the plaintiff delivered to Lenon at his elevator, in different lots, the quantity of wheat above mentioned, and received upon the delivery of each lot a receipt signed by the latter's agent of the following tenor:

No. 1.                    DELPHI, IND., July 24, 1882.
Received of Harry Lyon 53 fifty-three bushels fifty lbs. wheat. Not transferable without notice.
                                        J. V. McCAIN.

*JOHN LENON.*

There is no evidence of any contract or understanding outside of the receipt itself, except such as is afforded by the course of business between the parties. Lenon testified that his manner of dealing with the plaintiff, as with others, was that the latter would deliver wheat at the elevator and take receipts therefor such as that set out. Whenever receipts were presented by the holder, Lenon would pay the market price of wheat at the date of presentation, and take them up. It was also shown that when presentation of the receipt was deferred beyond thirty or sixty days, a small sum as for storage was charged, and a charge was also made for insurance.

All wheat of the same grade was put into a common mass

when received, as the plaintiff knew, and was shipped out indiscriminately. An effort was, however, made to keep on hand an amount equal to the outstanding receipts. This was done, not for the purpose of returning wheat to those who held receipts, but as a matter of precaution on the part of Lenon in case of fluctuations in the market. While receipts were thus held for five hundred and seventy bushels of wheat delivered by the plaintiff, Lenon became financially embarrassed and made an assignment, under the statute, for the benefit of his creditors. He had on hand at the time a quantity of wheat more than sufficient to have returned the amount due the plaintiff, but far short of the amount represented by all his outstanding receipts. The plaintiff offered to pay the storage and insurance, and demanded wheat of the assignee equal in quantity to that represented by his receipts.

The case was tried by a jury, the trial resulting in a general verdict and judgment for the defendants.

The only question for consideration is, did the receipts and the attending circumstances constitute the transaction a contract of sale, or was it a bailment? Upon its face the writing furnishes no suggestion, whether the wheat was received in store, or upon a contract of sale. Resort was, therefore, properly had to extrinsic evidence. The general and known course of dealing of Lenon was properly considered. The case is distinguishable from *Schindler* v. *Westover*, 99 Ind. 395, and *Rice* v. *Nixon*, 97 Ind. 97 (49 Am. R. 430). In the cases cited, it appeared on the face of the receipts that the wheat was left in store. In this, nothing appears except the receipt and the general course of business.

There was evidence from which the jury may have found that Lenon's business was not that of a warehouseman. He so testified. They may have found that he was engaged in purchasing and shipping grain; that the wheat for which the receipts were given was delivered upon the understanding, implied from the known course of Lenon's business, that it was in no event to be kept for him, or that either the wheat

delivered or other wheat of like quality was to be returned on demand, but that it would be shipped and sold at Lenon's pleasure on his own account, and that the plaintiff was entitled, upon presentation of his receipts, to demand the market price of wheat at the date of such presentation, and nothing more.

Wheat delivered under a state of facts such as we have assumed the jury may have found, would be a delivery in pursuance of a sale. In such a transaction there would be no element of bailment. A contract of bailment contemplates the return of the goods bailed, or, growing out of the necessities of commerce, where grain is delivered in store, other grain of like quality and grade may be returned in its stead.

We recognize the doctrine, that if wheat is delivered in pursuance of a contract of bailment, the mere fact that it is mixed with a mass of like quality, with the knowledge of the depositor or bailor, does not convert that into a sale which was originally a bailment. *Nelson* v. *Brown*, 44 Iowa, 455; *Nelson* v. *Brown*, 53 Iowa, 555; *Sexton* v. *Abbott*, 53 Wis. 181. Upon the facts in this case, there was no bailment to begin with.

Where grain is received by a dealer, under a contract, either express or implied, to pay the person delivering it the market price whenever he chooses to demand it, and such grain is mixed with other of like quality in bins from which shipments are being made daily, there being no understanding that the owner shall have the right to demand either his own or a like quantity of other in return, the dealer becomes the owner of the grain, and is liable to pay for it whenever called upon. As in such a case the contract from the beginning furnishes the criterion by which the price is to be fixed, it is not invalid. *McConnell* v. *Hughes*, 29 Wis. 537; *Richardson* v. *Olmstead*, 74 Ill. 213. We can not say the verdict was not sustained by the evidence.

Turning now to the instructions of which the appellant complains, special objection is made to the fourth, in which the

jury were told to inquire what agreement, if any, was made concerning the disposition of the wheat, and were further directed that if they should find that the wheat was deposited with an agreement that it should be returned to the plaintiff, then it would remain his property, but if there was a sale of the wheat at the time it was delivered, then it could not be recovered.

We can perceive no error in this charge. It is said, the court had no right to leave it to the jury to say what the agreement was, because there was no evidence that any agreement, either of sale or of bailment, was made. This assumption—in its breadth—can not be maintained.

While it may be said, there is no direct evidence one way or the other, it was nevertheless the duty of the jury, from the facts and circumstances before them, to determine, under the rules of law as given them by the court, whether the wheat was delivered under a contract of sale or of bailment. There was evidence which enabled them to do that.

In the sixth instruction they were told, that if Lenon was engaged in buying and selling grain, and received the plaintiff's wheat, and with his consent mixed it with other wheat in his warehouse, and gave receipts for it, showing the number of bushels received, and with his consent shipped and sold his wheat without any agreement to hold a like quantity in store to be delivered to the plaintiff on demand, then the transaction was a sale. This was a substantially correct statement of the law. If from the circumstances an agreement could have been inferred, that the plaintiff's wheat might be sold without keeping either that or any other to replace it on demand, we are unable to conceive how it could have been deemed a bailment.

Where wheat is received under the circumstances supposed, if the dealer has the right at his pleasure either to ship and sell the same on his own account, and pay the market price on demand, or retain and redeliver the wheat or other wheat

in the place of it, the transaction is a sale. It is only where the bailor retains the right from the beginning to elect whether he will demand the redelivery of his property or other of like quality and grade, that the contract will be construed to be one of bailment. If he surrenders to the other the right of election, it will be considered a sale, with an option on the part of the purchaser to pay either in money or property as stipulated. ᐩ The distinction is, can the depositor by his contract compel a delivery of wheat, whether the dealer is willing or not? If he can, the transaction is a bailment. If the dealer has the option to pay for it in money or other wheat, it is a sale. ᐱ *Johnston* v. *Browne*, 37 Iowa, 200 ; *Chase* v. *Washburn*, 1 Ohio St. 244.

The instruction given is fairly within the principles stated. What has been said sufficiently indicates that the other instructions complained of were unexceptionable.

That the court admitted the testimony of certain witnesses showing the general method pursued by Lenon in receiving and paying for wheat, is the subject of an objection. The appellant introduced evidence similar in character, and upon the principle of the cases of *Lowe* v. *Ryan*, 94 Ind. 450, and *Gaff* v. *Greer*, 88 Ind. 122 (45 Am. R. 449), which in effect hold that a party will not be heard to object to evidence introduced by his adversary to meet evidence of like character introduced by himself, he is not now in a position to ask a reversal, even if the evidence had been improperly admitted. The evidence was, however, competent.

While it is true, that usage in a particular trade or business can not control an express contract, it is nevertheless presumable, where a contract is ambiguous, that it was made with reference to the known usage or ordinary course of a particular business. In such a case, it is competent to show what the known and ordinary course of a particular business is, with a view of raising a presumption that the transaction in question was according to the ordinary course of the busi-

ness. to which it related. *Reissner* v. *Oxley*, 80 Ind. 580; *Jaqua* v. *Witham and Anderson Co., ante,* p. 545; *Lonergan* v. *Stewart*, 55 Ill. 44.

Finding no error, the judgment is affirmed, with costs.

Filed June 3, 1886.